United States District Court
Southern District of Texas
**ENTERED**
February 07, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Jerusalem Halal Meats, Inc. | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-17-1423 |
| | § | |
| United States of America | § | |
| *Defendant*. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## Memorandum and Recommendation

Jersualem Halal Meats (JHM) seeks judicial review of a Food and Nutrition Service (FNS) decision to disqualify JHM from participating in the Supplemental Nutrition Assistance Program (SNAP) for one year. The United States has moved for summary judgment. (D.E. 13.) Having considered the parties' submissions and the law, the court recommends that the United States' motion be granted and this case be dismissed with prejudice.

1.    Statutory & Regulatory Framework

In 1963, Congress passed the Food Stamp Act of 1964, which is codified at 7 U.S.C. §§ 2011–2036, to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households." 7 U.S.C. § 2011. Congress amended the statute in 2008, renaming it the Food and Nutrition Act and changing the name of the "food stamp program" to the Supplemental Nutrition Assistance Program ("SNAP").

Through SNAP, qualified households can buy food at approved participating stores. 7 U.S.C. § 2013(a). "[R]etail stores authorized to participate in the program may accept food stamp benefits instead of cash for designated food items," and then

"redeem these benefits with the government for face value." *Affum v. United States*, 566 F.3d 1150, 1153 (D.C. Cir. 2009) (citing 7 U.S.C. § 2013(a)). The Food and Nutrition Service (FNS) is the bureau within the USDA charged with administering the SNAP program. The FNS provides eligible households with electronic benefit transfer (EBT) cards, which are used like credit cards at the cash register to exchange SNAP benefits for eligible food. *See* 7 U.S.C. §§ 2012(i), 2016(a). These EBT cards may be used "only to purchase food from retail food stores which have been approved for participation" in SNAP, 7 U.S.C. § 2016(b), and "may be accepted . . . only in exchange for eligible food," and "may not be accepted in exchange for cash." 7 C.F.R. § 278.2(a).

The Food and Nutrition Act of 2008 allows the FNS to disqualify any approved retail food store for a specified period of time and/or assess a civil penalty of up to $100,000 for each violation of the statute or of the regulations promulgated under it. 7 U.S.C. § 2021(a). Under FNS regulations, when investigating violations, the FNS may consider "facts established through on-site investigations, inconsistent redemption data, [or] evidence obtained through a transaction report under an electronic benefit transfer system." 7 C.F.R. § 278.6(a).

After reviewing that information, the FNS's Retailer Operations Division will send a charge letter to the store detailing the allegations. The store has an opportunity to respond. *See* 7 C.F.R. § 278.6(b). The FNS then issues its determination. *See id*. § 278.6(c). An aggrieved store may appeal the FNS's determination to an administrative review officer. See 7 U.S.C. § 2023(a)(3); 7 C.F.R. §§ 279.1(a), 279.5. The review officer will issue a final agency decision. See 7 U.S.C. § 2023(a)(5); 7 C.F.R. § 279.5. These administrative proceedings are not governed by the Federal Rules of Civil Procedure or Evidence.

Once the FNS issues a final decision, an aggrieved party may file a complaint against the United States seeking judicial review

under 7 U.S.C. § 2023(a)(13) in the United States District Court in the district where the food retailer resides or is engaged in business.

The district court's review is "a trial *de novo*," in which "the court shall determine the validity of the questioned administrative action in issue." § 2023(a)(15). On *de novo* review under Section 2023, the plaintiff "may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency, and the agency itself may offer any evidence available to support its action, whether or not in the administrative record." *Redmond v. U.S.*, 507 F.2d 1007, 1011–12 (5th Cir. 1975). Unlike the administrative appeal, judicial proceedings under Section 2023 afford both parties the full panoply of pre-trial discovery tools available under the Federal Rules of Civil Procedure.

2.     Administrative Proceedings & Procedural Posture

The following facts are established by the administrative record. JHM is an authorized SNAP participant. In 2016, the FNS's Retailer Investigation Branch investigated JHM for possible SNAP violations. In a letter dated January 10, 2017, the Retailer Operations Division of the Department of Agriculture informed JHM that it was being charged with "accepting SNAP benefits in exchange for merchandise which, in addition to eligible foods, included major non-food items." (D.E. 15-1 at 40.) According to the charge letter, such exchanges violate 7 C.F.R. § 278.2(a) of the regulations governing the Food Stamp and Food Distribution Program, and "warrant a disqualification period of 1 year" under 7 C.F.R. § 278.6(e)(5)–(6).

Enclosed with the charge letter was an FNS Investigator's report. The report stated that a confidential informant visited JHM seven times between October and December 2016 and used SNAP benefits to purchase "common non-food and major non-food items exceeding the cost of $10" on six of those seven visits. (D.E. 15-1 at 42–D.E. 15-2 at 10.) In addition to the Investigator's narrative description of the purchases, the report documented the items

purchased, the price of each item (if available), and a description of the clerk who made the exchange. *Id.*

On January 23, 2017, JHM's counsel sent a letter to the FNS responding to the charge letter stating that "[JHM] take[s] these allegations very seriously, and it is our intent to cooperate fully and completely with the USDA." (D.E. 15-2 at 13.) JHM "denie[d] that it knowingly sold ineligible items to the confidential informant." (D.E. 15-2 at 14.) It stated that "[i]f the clerk did sell non-food items for SNAP benefits, this would have been in violation of store policies and against the training that the employee received." *Id.* JHM argued that a one-year disqualification would be "unfair and excessive" and that "the appropriate penalty would be a warning letter pursuant to § 278(e)(7)" or a civil monetary penalty in lieu of disqualification under 7 C.F.R. § 278.6(f)(1). *Id.*

The Retailer Operations Division issued a recommendation dated February 10, 2017. (D.E. 15-2 at 44.) The recommendation documented each of the alleged violative transactions and reported that JHM had been sanctioned in 2008 for selling ineligible non-food items in exchange for SNAP benefits. (D.E. 15-2 at 47.) It stated that JHM was ineligible for a hardship civil money penalty and detailed its findings in support of that determination. (D.E. 15-2 at 47–D.E. 15-3 at 3.) It recommended that JHM be disqualified from participating in SNAP for one year. (D.E. 15-3 at 3.)

JHM requested administrative review of the recommendation (D.E. 15-3 at 10–11) and submitted additional information to the FNS. JHM did not dispute that EBT transactions occurred on the days that the alleged violative exchanges occurred. JHM stated that, based on EBT receipts, it "determined that the alleged transactions all occurred on cash register #3." (D.E. 15-3 at 40–41.)

JHM submitted two affidavits: one by the clerk who worked register #3 when the violations allegedly occurred and one by the Director of JHM. (D.E. 15-3 at 44–47.) Both affidavits stated that all JHM employees were trained on the requirements of the SNAP

program, were monitored while working at the cash register, and would be terminated if they violated the SNAP regulations. *Id*. The clerk stated that the violations did not take place. *Id*. JHM also submitted electronic benefit transfer (EBT) receipts for purchases on the days of the alleged violations and photographs of the allegedly purchased ineligible items on the shelves of the store. (D.E. 15-3 at 48–D.E. 15-4 at 21.)

The FNS issued a Final Agency Decision on April 6, 2017, sustaining the Retail Operations Division's recommendation to disqualify JHM from SNAP for one year. (D.E. 15-4 at 35.)

JHM filed this action for judicial review under 7 U.S.C. § 2023. (D.E. 1.) The United States filed a motion for summary judgment, attaching as an exhibit the complete record of the FNS's administrative proceedings. (D.E. 13.)

The United States seeks summary judgment on the grounds that JHM cannot satisfy its burden of showing by a preponderance of the evidence that the violations did not occur and that disqualifying JHM for one year was not arbitrary or capricious. (D.E. 13.) JHM has objected to parts of the FNS's administrative record that include (1) the FNS Investigator's report based on the confidential informant's purchases at JHM and (2) the Retailer Reply and Case Sanction Recommendation issued before the FNS's Final Agency Decision. (D.E. 18 at 3–4.) The court includes here a discussion of those reports where relevant to the procedural posture of the case. The court does not rely on the objectionable documents for the truth of the matters they assert.

3.    Legal Standards

     A.    Summary Judgment

Summary judgment under Federal Rule of Civil Procedure 56(a) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also* Fed. R. Civ. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the nonmovant bears the burden of proof at trial, the movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim. *Celotex*, 477 U.S. at 323. The movant may, but does not have to, negate the elements of the nonmovant's case to prevail on summary judgment. *Id.*; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

If the movant meets its burden and points out an absence of evidence on an essential element of the nonmovant's case, on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). The nonmovant may not rely merely on allegations, denials in a pleading, or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees*, 40

F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 247–48 (emphasis in original); *see also State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "significant probative evidence." *Gutterman*, 896 F.2d at 118. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) (citing *Liberty Lobby*, 477 U.S. at 249–50).

### B.    Review of SNAP Eligibility Determination

The district court reviews *de novo* the "validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). "[T]he agency action stands, unless the plaintiff proves that it should be set aside." *Redmond*, 507 F.2d at 1011–12. The Fifth Circuit has reasoned that if the plaintiff "put[s] on no evidence, then the record would be enough to justify the Court in upholding an administrative action." *Id.* at 1012.

The plaintiff challenging disqualification bears the burden of proving that the agency's action was invalid by a preponderance of the evidence. *See* 7 U.S.C. § 2023; *see also Redmond*, 507 F.2d 1007, 1011–12 (5th Cir. 1975) (describing judicial review of an FNS decision "as a trial anew in which the plaintiff [] retains the burden of proving every essential element of a cause of action"); *Kingway Supermarket v. United States*, 545 F. Supp. 2d 613, 616 (S.D. Tex. 2008); *Khan v. United States*, Civil Action No. H-05-0947, 2006 WL 3147331, at *1 (S.D. Tex. Oct. 31, 2006). "[By] permitting a trial *de novo*, Congress intended nothing more than that the district court would not be bound by the administrative record." *Redmond*, 507

F.2d at 1011.

In other words, under *Redmond*, the Final Agency Decision raises a presumption that the violations alleged in the decision occurred. *See Redmond*, 507 F.2d at 1012. That presumption shifts the burden of proving that the alleged violations did *not* occur to the aggrieved store.

Courts distinguish between the standard of review that applies to the agency's determination that a violation occurred and the standard of review that applies to the agency's penalty decision. *E.g.*, *Irobe v. U.S. Dep't of Agriculture*, 890 F.3d 371, 377 (1st Cir. 2018); *McGlory v. United States*, 763 F.2d 309, 311 (7th Cir. 1985). While the district court determines the validity of the violation determination *de novo*, the district court will set aside the agency's final penalty determination only if it is arbitrary and capricious or contrary to law. *Irobe*, 890 F.3d at 377; *see also Abdelkhalik v. United States*, Civil Action No. 94-C-5809, 1996 WL 41234, *2 (N.D. Ill. Jan. 30, 1996) (defining arbitrary and capricious to mean "unwarranted in law" or "without justification in fact."); *Khan*, 2006 WL 3147331 at *1 (same).

4.   Analysis

   A.   The undisputed summary judgment evidence raises no genuine issue of material fact that the alleged violations did not occur.

The United States argues that the Plaintiff has not carried its burden of showing, by a preponderance of the evidence, that the violations did not occur. The undisputed summary judgment evidence consists of:

- JHM's submissions to the FNS during the administrative proceedings, including:
  - an affidavit by a director of JHM,
  - an affidavit by a register clerk at JHM,
  - photographs of the store and items on the shelves of the store, and

o EBT receipts from the dates of the alleged violations; and

- The FNS's Final Agency Decision.

Summary judgment for the United States is appropriate because none of this evidence raises a genuine dispute of material fact that the violations in question did not occur.

*The affidavits.* JHM submitted one affidavit signed by the clerk who worked register #3 when the violations allegedly occurred and one affidavit by a director of JHM. The clerk stated that, "[a]ccording to the EBT receipts" obtained in the investigation, "all of the transactions in question that occurred were on Register No. 3 during dates and times when [she] would have been working." (D.E. 15-3 at 44.) She stated JHM trained her that SNAP benefits can be used by customers only to purchase eligible food items and that a JHM manager never told her to accept SNAP benefits for ineligible items. (D.E. 15-3 at 44.) She stated that she had never knowingly sold ineligible items for SNAP benefits and that if videotape surveillance of her shifts were available, she believed they would show that she did not execute the allegedly violative transactions. (D.E. 15-3 at 44–45).

The director stated that he was familiar with SNAP regulations and all his employees were trained only to accept SNAP benefits in exchange for eligible food items. (D.E. 15-3 at 46.)

The affidavits do not specifically deny that the violations occurred. (*See* D.E. 15-3 at 45 ("I believe that if the videotapes were available, they would show that I did not do the transactions that are being claimed.").) But even reading the clerk's affidavit as denying that the violations occurred, a bare denial does not create a "genuine" dispute of material fact about whether the violations occurred.

A dispute of material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The clerk's bare denial is not

enough for a reasonable jury to find, by a preponderance of the evidence, that the violations did not occur, as JHM must show under *Redmond. See W & H Food & Gas, Inc. v. United States*, Civil Action No. 17-11096, 2018 WL 4961531, at *2 (E.D. Mich. Oct. 15, 2018) ("[A] mere denial of any wrongdoing does nothing to even slightly tip the balance of evidence in Plaintiff's favor."); *Abdelkhalik*, 1996 WL 41234, *2 ("[P]laintiff's denials [do not] prove that the violations did not occur.")

*The photos.* JHM took photos of items on its shelves and submitted them during the administrative proceedings. JHM's photos show SNAP-ineligible goods in stock on the shelves of the store. The items in the photos correspond with items that the FNS alleges were purchased in exchange for SNAP benefits. (*Compare* D.E. 15-4 at 36 (FNS Final Agency Decision describing items sold as "blankets, a blender, a waffle maker, a faux fur throw, a citrus juicer, a coffee maker, and a game set") *with* D.E. 15-4 at 12–20 (photographs of a game set, a coffee maker, a blender, and other non-food items in stock at the store).) Even viewed in the light most favorable to JHM, these photos show that the items allegedly purchased were in stock. They do not support any inference that the alleged violations did not occur. The photos actually corroborate the FNS's Final Agency Decision.

*The receipts.* The EBT receipts were located by JHM and, according to the JHM director's affidavit, "correspond with the transactions set-forth [sic] in the letter of charges [] and some of the items that were alleged to have been sold." (D.E. 15-3 at 47.) Even viewed in the light most favorable to JHM, the EBT receipts corroborate the FNS's Final Agency Decision. The receipts certainly do not prove that the transactions did not occur.

The record is devoid of any other evidence showing that the violative transactions did not occur. JHM did not submit any evidence that was not already in the administrative record. While JHM may not have had the means to conduct discovery during the

administrative proceedings, it was free to do so in these federal proceedings. JHM chose not to serve requests for production, interrogatories, or requests for admission on the United States. JHM took no depositions. *See Redmond*, 507 F.2d at 1012. ("[If the plaintiff] put[s] on no evidence, then the record would be enough to justify the Court in upholding an administrative action.").

B.   JHM's arguments against summary judgment are meritless.

JHM argues that it should not be put to the burden "to prove a negative," that it was unfair for the FNS to rely on an unknown confidential informant, and that it was prejudiced by the FNS's delay in notifying JHM of the alleged violations. (D.E. 18 at 6–9.)

*Burden of proof.* It is well settled that JHM bears the burden to show, by a preponderance of the evidence, that the alleged violations *did not* occur. *Redmond*, 507 F.2d at 1011–12. JHM's arguments to the contrary are meritless.

*Confidential informant.* JHM objects to the admission of the FNS Investigator's report on the confidential informant's purchases at JHM and to the FNS Program Specialist's Case Sanction Recommendation. The court need not decide whether the report and recommendation are admissible and assumes they are not for purposes of deciding summary judgment. The report and recommendation were created in accordance with the regulations governing SNAP, which permit the FNS to consider evidence acquired through on-site investigations of the store. *See* 7 C.F.R. § 278.6(a). JHM does not contend that the FNS failed to comply with those regulations in conducting its investigation into JHM and issuing its Final Agency Decision. Those proceedings were not subject to the Federal Rules of Civil Procedure or Evidence. The FNS's finding that the violations occurred, and not the confidential informant's report, shifts the burden to JHM to prove that the violations did not occur. *See Redmond*, 507 F.2d at 1011–12.

*Notice timing.* JHM's argument that it was prejudiced by the

timing of FNS's notice is immaterial. JHM claims that if it learned of the charge sooner, it could have reviewed surveillance footage that may have disproven the allegations but was erased in the interim. This conjectural, conclusory assertion does nothing to help JHM carry its burden of showing that the violations did not occur.

JHM's objections are meritless. They do not alter this court's conclusion that JHM has not produced sufficient evidence to create a genuine issue of material fact in support of its claim that the violative purchases never occurred.

C.   JHM has not met its burden to show the FNS's penalty was arbitrary and capricious or contrary to law.

The United States asserts that JHM has no evidence that JHM's sanction of disqualification for one year was arbitrary or capricious, because the sanction was within the ranges prescribed by 7 U.S.C. § 2021 and 7 C.F.R. § 278.6. (D.E. 13 at 6–7.) JHM argues that the sanction was arbitrary and capricious because the United States "has brought forth no competent summary judgment evidence establishing that the alleged sale of common non-food items was due to carelessness or poor supervision by the firm's ownership or management." (D.E. 18 at 16.)

Under 7 C.F.R. § 278.6(e)(5):

> [T]he FNS shall . . . disqualify the firm for 6 months if it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management.

That period doubles "if the same firm has once before been assigned a sanction." 7 C.F.R. § 278.6(e)(6).

The FNS's Final Agency Decision's penalty was based on the investigative report, which documented exchange of SNAP benefits for "common non-food and major non-food items" over $10 on six occasions. (D.E. 15-4 at 36.) Those items included obviously non-

food items, such as board games and a faux fur throw. (D.E. 15-4 at 36.)

JHM's violations fall within the scope of § 278.6(e)(5)–(6). It was not improper for the FNS to infer carelessness based on the sale of thirteen major ineligible items over six visits in the span of two months. *See Latino Mart & Disc. Corp. v. United States*, Civil Action No. 07-22690, 2008 WL 616109, at *5 (S.D. Fla. Mar. 3, 2008) (upholding disqualification because "[i]t was not arbitrary and capricious to infer carelessness" from finding that clerk sold "three common nonfood items within the space of one week"); *see also Phany Poeng v. United States*, 167 F. Supp. 2d 1136, 1141 (S.D. Cal. 2001) (upholding disqualification on similar facts); *see also Country Club Food Mkt. v. United States*, Civil Action No. 07-972, 2008 WL 11451519, at *5–6 (D.N.M. May 23, 2008) (upholding six-month disqualification based on six occasions of exchanging "common ineligible items" for SNAP benefits).

JHM also argues the appropriate penalty was a warning letter. 7 C.F.R. § 278.6(e)(7) provides that the FNS shall "send the firm a warning letter if violations are too limited to warrant a disqualification." The number of violations on which the FNS based its penalty, thirteen major ineligible items and two ineligible items, is not too limited to warrant disqualification, as courts have routinely recognized. *E.g.*, *Latino Mart & Disc. Corp.*, 2008 WL 616109, at *5; *Phany Poeng*, 167 F. Supp. 2d at 1141; *Country Club Food Mkt.*, 2008 WL 11451519, at *6.

Finally, JHM argues that the FNS should have issued a civil money penalty in lieu of disqualification under 7 C.F.R. § 278.6(f)(1), which provides:

> FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food

store in the area selling as large a variety of
staple food items at comparable prices.

The FNS's Final Agency Decision reiterated the Retailer
Operations finding that "it was not appropriate to impose a CMP in
lieu of a one year period of disqualification" because "there are other
authorized retail stores in the area selling as large a variety of staple
foods." (D.E. 15-4 at 42.) The Retailer Reply and Case Sanction
Recommendation contains a Fiscal Claim Evaluation of "Not
Applicable" and rates JHM "Ineligible" for "Hardship CMP
Consideration." (D.E. 15-2 at 47.) The Final Agency Decision found
the "decision to deny a CMP was correct." (D.E. 15-4 at 42.)

The report classified JHM as an "LG [large]" grocery store and
identified another large grocery store within half a mile of JHM.
(D.E. 15-2 at 48.) The report included photos and detailed findings
of the comparable offerings available at the other large grocery store.
(D.E. 15-2 at 47–48; D.E. 15-3 at 1–2.)

Moreover, the FNS regulations provide that "FNS may
disqualify a store which meets the criteria for a civil money penalty if
the store had previously been assigned a sanction," 7 C.F.R.
§ 278.6(f)(1), which JHM had, as noted in the Final Agency Decision.
(D.E. 15-4 at 42.)

It was not arbitrary or capricious for the FNS to exercise its
discretion not to impose a civil money penalty given the
administrative record concerning the other available stores in JHM's
area. The court concludes that the agency's findings are not
"unwarranted in law" or "without justification in fact," and thus the
agency's penalty decision should stand. *See Abdelkhalik*, 1996 WL
41234, at *2.

5.    Due Process

JHM argues that its Due Process right to confront and cross-
examine witnesses was denied because the FNS did not disclose its
confidential informant's identity. This claim is meritless for several
reasons.

"By providing the aggrieved food store with a new trial where the store may introduce evidence outside the administrative record, the statute also protects the rights and interests of the store against final adverse action without the opportunity for an adversary hearing." *Redmond*, 507 F.2d at 1012. In other words, as many courts have recognized, "when a *de novo* trial is provided in the district court, due process is automatically satisfied." *Nguyen v. United States*, Civil Action No. 97-576, 1997 WL 124138, at *5 (E.D. La. Mar. 18, 1997) (collecting cases).

JHM did not take advantage of the due process that the SNAP statute affords it. *See Redmond*, 507 F.2d at 1012. Since JHM bears the burden to show that the alleged violations did not occur, it is JHM's burden to seek the discovery it needs to make that showing. JHM complains it does not know the identity of the informant, but it never requested that information from the United States, much less moved to compel its production. (D.E. 13 at 6 n. 2 (stating JHM has served no discovery on the United States).) JHM's decision not to seek discovery effectively waived any due process claim concerning the identity or cross-examination of the confidential informant.

JHM also claims that the FNS violated its substantive due process rights. (D.E. 18 at 12, ¶ 22.) Assuming, for the sake of discussion, store owners have some recognizable property right to accept EBT funds—a proposition for which JHM provides no support—it is not a fundamental right. *Razzak v. United States*, Civil Action No. A-13-CA-207, 2014 WL 582079, at *5 (W.D. Tex. Feb. 13, 2014). To survive a substantive due process challenge, therefore, the regulations must merely have some rational basis. *Rainwaters v. Jackson Cty.*, 9 F.3d 102 (5th Cir. 1993) ("Unless a classification involves suspect classes or fundamental rights, judicial scrutiny . . . demands only a conceivable rational basis [].").

Numerous courts have rejected substantive due process challenges to the SNAP disqualification scheme. *See, e.g.*, *Razzak*, 2014 WL 582079, at *5 (collecting cases); *Traficanti v. United*

*States*, 227 F.3d 170, 175 (4th Cir. 2000) ("[W]e hold that the statute's strict liability regime is rationally related to the government's interest in preventing fraud."); *Kim v. United States*, 121 F.3d 1269, 1274 (9th Cir. 1997) (rejecting a substantive due process challenge and concluding disqualification of "innocent store owners whose employees engage in trafficking violations for their own benefit and without the owner's knowledge or consent" is rationally related to Congress's goal of promoting the adoption of effective SNAP compliance policies); *TRM, Inc. v. United States*, 52 F.3d 941, 947 (11th Cir. 1995) ("Congress could rationally have concluded that a store owner who risks losing the ability to accept food stamps is more likely to be vigilant and vigorous in the prevention of employee trafficking."). The court agrees, and finds the SNAP disqualification scheme is rationally related to the government's legitimate interest in preventing trafficking.

The court finds that JHM has not been deprived of its right to due process.

6.    Conclusion

The court recommends that the United States of America's Motion for Summary Judgment be GRANTED and this case be DISMISSED with prejudice. The parties have fourteen days from service of this memorandum and recommendation to file written objections. Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on February 7, 2019.

Peter Bray
United States Magistrate Judge

16